UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE NO. 21-MJ-167 (GMH)** |
| | : | |
| v. | : | |
| | : | |
| **TROY FAULKNER,** | : | |
| Defendant. | : | |

MOTION FOR EMERGENCY STAY AND
FOR REVIEW OF RELEASE ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to, first, stay defendant Troy Faulkner's release pending trial, and second, review the decision by the Magistrate Judge from the Southern District of Ohio to deny the government's motion for pre-trial detention. In support thereof, the government states the following:

I.   **BACKGROUND**

A.   **Procedural Posture**

On or about January 29, 2021, defendant Troy Faulkner was arrested in his home state of Ohio on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge G. Michael Harvey in connection with a Criminal Complaint charging the defendant with 18 U.S.C. § 1361 - Destruction of Government Property; 18 U.S.C. § 1512(c)(2) - Obstruction of an Official Proceeding; 18 U.S.C. 1752 (a)(1)(2)and (4) - Knowingly Entering or Remaining in a physical violence against any person or property in any restricted building or grounds without lawful authority; and 40 U.S.C. § 5104(e)(2)(D) and (G) - Violent Entry or Disorderly Conduct, obstruct, or impede passage, and parade, demonstrate, or picket on Capitol

Grounds.

At his initial appearance and detention hearing in the Southern District of Ohio, the government made a motion to detain the defendant without bond pending trial. The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(A), which provides for detention in felony cases involving a crime of violence. The presiding magistrate judge denied the government's detention motion and issued an order releasing the defendant with certain conditions. Following this, the government orally moved to stay the defendant's release pending an appeal by the government. The magistrate judge granted that request, and absent further action, the release will be effectuated at approximately 12:00 p.m. EST on February 2, 2021.

    **B.**    **Statement of Facts**

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, between 1:00 p.m. and 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Beginning, on or about January 11, 2021, the Whitehall Ohio Police Department crime and intelligence analyst sent a tip to the FBI intake unit identifying TROY ELBERT

FAULKNER ("FAULKNER") after observing a video of FAULKNER on the U.S. Capitol grounds unlawfully kicking in and breaking a window at the U.S. Capitol. This identification was based on prior contact law enforcement officers had with FAULKNER.

Additionally, on or about January 12, 2021, a fellow law enforcement officer and your affiant identified and reviewed several videos showing footage of the aforementioned events that occurred on January 6, 2021. During the review of these videos, your affiant observed an unknown male, later identified as FAULKNER, unlawfully kicking in and breaking a window at the U.S. Capitol. During the review of these videos, your affiant observed FAULKNER in publicly available video obtained through Youtube that showed video of the incident at the U.S. Capitol on January 6, 2021. In the video, before jumping up on a ledge to kick in the window, FAULKNER could be seen facing away from the camera with his back turned. On the back of his jacket, there is the name of a company "FAULKNER PAINTING" and the telephone number "XXX-XXX- 6985." Your affiant was able to confirm through the Ohio Secretary of State's website that FAULKNER did own a painting business in his name consistent with the company's logo on the back of the jacket.

On January 13, 2021, on a recorded call to the FBI National Threat Operations Center hotline, an individual identifying himself as TROY FAULKNER, called the FBI hotline to report his destruction of the U.S. Capitol's shutter in Washington, D.C. FAULKNER gave his date of birth as XX/XX/1981, and his cellular phone number as XXX-XXX-6985. Your affiant notes that the number provided by the individual identifying himself as FAULKNER is the same number that was seen on the back of the coat of the individual identified as FAULKNER in the above- referenced video, as well as the phone number on a publicly available Facebook page with the username of "Troy Faulkner."

On January 19, 2021, your affiant spoke with an officer from the Whitehall Ohio Police Department. This officer stated to your affiant that he had arrested FAULKNER in the past and confirmed that he reviewed the below still images and that the individual seen kicking in part of a window at the U. S. Capitol building was FAULKNER. This officer stated to your affiant that he was certain of this identification.

Furthermore, your affiant reviewed photos on a publicly available Facebook page for an individual with the username "Troy Faulkner," and observed an individual that closely resembles FAULKNER's Ohio BMV picture. In addition, a picture of an image with a tan background and the words "Faulkner Painting" and the phone number "XXX-XXX-6985" are posted on this Facebook page. The image, colors and wording in the Facebook image are identical to the tan coat that the individual in the video damaging the U.S. Capitol was wearing as noted below and identified as FAULKNER.

The screenshots below, which are derived from the above-mentioned video, shows FAULKNER wearing his jacket with the name of his company "FAULKNER PAINTING" and the telephone number "XXX-XXX-6985" on it and a comment to FAULKNER regarding wearing his company's jacket during an "insurrection."






A nearly identical picture of the jacket can be seen on the Facebook page that appears to be associated with FAULKNER at https://www.facebook.com/troy.faulkner.50

The image below is a picture from this Facebook page:



Moreover, on January 11, 2021, a Whitehall Ohio Police Department crime intelligence analyst sent to the FBI a captured public Facebook exchange between FAULKNER and another individual. An individual wrote, "Both sides are ignorant for fighting with eachother." FAULKNER replied, "[the individual] we weren't fighting against antifa we're fighting against the government" and "We took it to there front door unlike the p****ass BLM."



Further, the assigned FBI case agent has reviewed a news article posted on Patch.com on January 14, 2021, which quoted FAULKNER via text message who said, "It seemed the cops were antagonizing us and letting them straight into the building in the front so I believe it was all set up for the Trump people," he said. "I knew I shouldn't have kicked in the window. I was upset and wasn't thinking rationally." A screen shot of FAULKNER kicking in the window is at the top of the news article. This news article can still be viewed at - https://patch.com/ohio/columbus/s/hdvoa/ohio-man-joins-raid-u-s-capitol-i-shouldn-t-have-

kickedwindow?utm_source=flipboard&utm_medium=rss&utm_term=community+corner&utm_campaign=recirc&utm_content=flipboard

### C. Order for Release

After an initial appearance and detention hearing in the Southern District of Ohio on or about February 1, 2021, the presiding magistrate judge issued an Order of Release for the defendant with certain conditions. On that same day, the United States orally sought a stay of the Order pending this Motion for Review. The magistrate judge granted that request, and absent further action, the release will be effectuated at approximately 12:00 p.m. EST on February 2, 2021.

## III.   ARGUMENT

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

The defendant is subject to detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because he is charged with a felony crime of violence. In this case, that offense is 18 U.S.C. § 1361, by willfully injuring or committing any depredation against government property, or attempt to do so. The window, which the defendant kicked in and broke through, of the U.S. Capitol building is property of the United States and the cost to repair the window was determined to be more than $10,000. Consequently, the government requests review of the magistrate judge's decision to release the defendant and seeks a further stay of the order from this Court.

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
New York Bar No. 4444188


   */s/Emory V. Cole*
EMORY V. COLE
Assistant United States Attorney
PA. Bar No. 49136
U.S. Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7692
Emory.Cole@usdoj.gov