IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIM NO. 21-CR-126-BAH |
| TROY FAULKNER, | ) | Judge: Howell |
| | ) | |
| Defendant. | ) | Sentencing Date: 10/21/21 |

## DEFENDANT TROY FAULKNER'S SENTENCING MEMORANDUM

COMES NOW Troy Faulkner, by and through counsel, and submits the following memorandum in aid of sentencing.

## Background

On January 6, 2021, a joint session of Congress convened at the U.S. Capitol. The purpose for the joint session was to certify the vote count of the electoral college of the 2020 presidential election. At the time, then-President Donald Trump held a "Stop the Steal" rally, which encouraged participants to protest the certification of the 2020 election. During the rally, President Trump encouraged the individuals to go to the Capitol to protesting.

At approximately 2:00 p.m., some of the individuals who were at the "Stop the Steal" rally descended upon the U.S. Capitol. They forced there way through the barricades and police officers and continued their protesting. Some of the

1

protesters became violent, many of whom broke windows and doors and entered the U.S. Capitol. According to government estimates, several million dollars of damage that occurred both inside and outside of the U.S. Capitol. During the event, some of the police officers used nonlethal forms of defense against the protesters, which included the use of pepper spray and rubber bullets.

   The defendant Mr. Troy Faulkner was one of the individuals at the "Stop the Steal" rally and at the protests at the U.S. Capitol. Mr. Faulkner attended the rally earlier in the day and eventually made his way to the U.S. Capitol with the intent of continuing to protest. It was not Mr. Faulkner's original intent to be part of the violence, and he did not ever have the intention of breaking into the U.S. Capitol to disrupt the official electoral count. Indeed, he was dressed in a coat that had the name of his paint company and its phone number emblazoned on its back. However, while he was protesting, Mr. Faulkner was hit by a rubber bullet by one of the police officers.

   This fact that he had been hit by a rubber bullet and by pepper spray angered Mr. Faulkner. In response, he joined the protestors in their violent actions by jumping onto a window ledge (identified by the Architect of the Capitol as S1CR4S) and, by using his boot, turned around, kicked in, and broke a lower panel of a window. Though there was considerable damage to the window, it is

agreed by the parties that Mr. Faulkner did not enter the U.S. Capitol, or that the window was used for entry of others into the U.S. Capitol. Mr. Faulkner eventually left the U.S. Capitol grounds without further incident.

One week later, on January 13, 2021, Mr. Faulkner, having heard that the FBI was looking for him, voluntarily called the FBI National Threat Operations Center hotline to turn himself in. He provided and confirmed his information and admitted to his actions to the FBI, and he also indicated remorse for his actions on the original call. He also admitted to his wrongdoing the next day in a news article that was published on patch.com. However, instead of the FBI making arrangements with Mr. Faulkner to allow him to turn himself in voluntarily, the FBI descended a SWAT team into his home on January 29, 2021, unannounced. In the process the FBI destroyed his property, and seized or destroyed multiple items in his home, including his security cameras. He was arrested at that time.

After his arrest, Mr. Faulkner again cooperated with FBI agents. He once again admitted his guilt to officers. He explained that he did indeed break the window, but it was in reaction to his anger towards the police officers, as he was not acting violently. He explained that he only took the action of breaking a window in reaction to the police officers having hit him with rubber bullets and shooting tear gas at him and other protesters. He also explained that he had no

intention to go into the U.S. Capitol on that day. He also indicated his remorse for taking those actions.

On February 17, 2021, a federal grand jury in the United States District Court for the District of Columbia returned a seven-count Indictment charging Mr. Faulkner with 1) Destruction of Government Property, in violation of 18 U.S.C. § 1361; 2) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2); 3) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(l); 4) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); 5) Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(4); 6) Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and 7) Stepping, Climbing, Removing, or Injuring Property on the Capitol Grounds, in violation of 40 U.S.C. § § 5104(d) On August 5, 2022, Faulkner pled guilty pursuant to a plea agreement to Count One, felony Destruction of Government Property, in violation of 18 U.S.C. § 1361. Sentencing is scheduled for November 3, 2022.

## Argument

### A. Statutory Penalty

The penalty for a violation of one count of 18 U.S.C. § 1361 includes a) ten (10) years of imprisonment; b) a fine of up to $250,000; and c) a term of supervised release of up to three years pursuant to 18 U.S.C. § 3583(b)(2). As this is a felony, there is also a $100 special assessment.

### B. Sentencing Guideline Calculations

On October 7, 2022, the probation office filed its final Presentence Report (PSR) in this case. (Dkt. No. 45). In that report, the Criminal History Score was determined to be 5, thus placing Mr. Faulkner in Criminal History Category III. *Id.* at ¶ 53. As to the offense level, the PSR report writer began with a base offense level of 6. *Id.* at ¶ 33. Two points were added due to the amount of the loss. *Id.* at ¶ 34. However, two points were removed for acceptance of responsibility. *Id.* at ¶ 40. Accordingly, the PSR determined that Mr. Faulkner' Total Offense Level was a total of 6. *Id.* at ¶ 41. Thus, with the Criminal History of III and a Total Offense Level of 6, the PSR came to a sentencing range of 2 to 8 months. *Id.* at ¶ 123. This also places Mr. Faulkner in Zone B of the Sentencing Table. In addition, Mr. Faulkner has agreed to pay restitution in the amount of $10,560.

### C. Statutory Sentencing Factors

As this court knows, in <u>United States v. Booker,</u> 543 U.S. 220, 264 (2005), the Supreme Court indicated that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." Booker further indicated that the purpose of the guidelines was to "'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities[.]'" *Booker*, 543 U.S. at 264 (quoting 28 U.S.C. § 991(b)(1)(B)).

Given the factors under 18 U.S.C. § 3553(a), this court should consider the following: (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed educational or vocational training and medical care; and (4) the need for the sentence to avoid unwarranted disparities among defendants with similar records convicted of similar conduct. *See* 18 U.S.C. § 3553(a).

### 1. Nature and Circumstances of the Offenses

Mr. Faulkner pled guilty to felony destruction of property. Mr. Faulkner's purpose for going to the U.S. Capitol was not one to disrupt the electoral process

6

occurring inside. Instead, he was there to protest and indicate his disagreement with the results of the election. He is not alleged to have been violent or take any assaultive or violent behavior against anyone. To the contrary, Mr. Faulkner was the victim of pepper spray and nonlethal rubber bullets from law enforcement who were acting to defend the U.S. Capitol. Unfortunately, as he confessed to the FBI shortly after the arrest, his anger got the most of him on that day. While he is fortunate that he did not take his anger out on the police officers, he did become angry enough to kick in and cause partial damage to a window which caused over $10,000 in damages. He did not enter the U.S. Capitol, as that was never his intent, and the window that was damaged was not used by any individual to enter the U.S. Capitol. Furthermore, the fact that Mr. Faulkner was wearing a coat that had the name of his business (with his last name) and his phone number is undoubtedly proof that Mr. Faulkner did not have a premeditated plan when arriving there. Indeed, he was remorseful for his actions almost immediately, actually calling the FBI hotline to "turn himself in" after having heard that the authorities were looking for him. He essentially confessed while calling the hotline, and did it again after he was arrested, even though he was arrested when a SWAT team descended to his home unannounced in the early morning hours of January 29, 2021, despite his clear cooperation and voluntarily turning himself in to authorities.

### 2. Defendant's History and Characteristics

About Mr. Faulkner' history and characteristics, Mr. Faulkner' criminal history is somewhat dated. The most serious incident which was count in his criminal history calculation occurred over 10 years ago, which was a carrying a concealed weapon charged which occurred in September of 2011. His most recent offense was operating under the influence charge in 2016, for which Mr. Faulkner received 180 days incarceration with 177 days suspended and credit for time served.

Mr. Faulkner is a 41-year-old male. He came from a broken home, as his parents divorced when he was three years old. He had no relationship at all with his father and remains unaware of his father's age, employment, or whereabouts. His mother passed away in 2006 from a stroke. He does not have a good relationship with his brother, who is 2 years older than Mr. Faulkner. He was also the subject of physical abuse from an early age, which has led to him still dealing with mental health issues because of that abuse. He does have a son who is 20 years old, and despite being apart originally (the mother having moved out of state with the child at an early age), the two have grown to have a good father-son relationship at this time. Mr. Faulkner was married for a short time, having gotten married and divorced for a few months in 2006. Fortunately, he has bee in a romantic relationship for over 18 months.

Mr. Faulkner is in relatively good physical health, though he has been dealing with back issues regularly, for which he is prescribed medical marijuana.[1] He received his GED during a period of incarceration in 2008. He is self-employed, as he is the owner of Faulkner Painting, and has been since 2012. He works primarily in "high-risk" painting, namely buildings taller than three stories. He works as a subcontractor on painting projects throughout Ohio. He has had recent setbacks, in part due to the legal issues in this matter and is in the process of rebuilding his business. He also does drywall, flooring, and tile work as part of his business as well.

3. **Need to Promote Respect for the Law, to Provide Just Punishment, to Afford Adequate Deterrence, and to Protect the Public**

At the time of his arrest, Mr. Faulkner was detained for approximately one month. During that time, his company suffered and many of his employees quit, causing considerable business loss and a need to rebuild that remains even today. He has been on considerable restraints on his liberty since February of 2021, where he has been required to have a GPS monitor, curfew, and, with eh exception of some movement for work purposes, has been retrained to remain in the Southern District of Ohio. To the defense's knowledge, Mr. Faulkner has been and

---

[1] The court was made aware of his use of medical marijuana at the time of his plea and pretrial services concern of the issue was addressed at that time.

9

remains in compliance with his release conditions.

Mr. Faulkner has no intention of duplicating his illegal conduct in any way. His political opinions have changed and has come to feel that he has been used and manipulated by information that he has received by the media. He has been incredibly remorseful for his actions, almost immediately, and did something which is apparently uncommon in the January 6th cases: he turned himself in as soon as he heard that the FBI was looking for him and then too the greater step of confessing almost immediately even before he had counsel appointed in this case.

It should also be noted that Mr. Faulkner has been the subject of continued harassment by unknown individuals over the phone since the inception of this case. Because Mr. Faulkner was wearing a coat with his phone number on it, he has been subjected to many harassing and even threatening phone calls from people who have seen those pictures in the media.[2] Furthermore, Mr. Faulkner will be required to pay over $10,000 for the damage that was caused by his actions.

Accordingly, the public will be safe from any acts on his part, as he has no intention of repeating any actions of this kind. His period of pretrial supervision

---

[2] These pictures are not due to the courts or the government, as pictures and videos that have been part of the record from the inception of this matter have been redacted to not provide Mr. Faulkner's phone number.

has shown that he can comply with the orders of the court. Accordingly, Mr. Faulkner would be a good candidate for probation, which will also ensure that Mr. Faulkner is not a danger to the community in the future.

### 4. Need to Avoid Unwarranted Sentencing Disparities

Given the guideline calculations, and that he falls under Zone B of the sentencing guidelines table, Mr. Faulkner would request a sentence that is compliant with the sentencing guidelines. Specifically, Mr. Faulkner would request a probationary sentence of six months, all of it suspended, with a term of probation of twenty-four (24) months. However, in order to comply with USSG §5C1.1, Mr. Faulkner request that the probationary sentence include thirty-one days of home detention. As indicated in USSG §5C1.1:

> §5C1.1. Imposition of a Term of Imprisonment
>
> (a) A sentence conforms with the guidelines for imprisonment if it is within the minimum and maximum terms of the applicable guideline range.
>
> (b) If the applicable guideline range is in Zone A of the Sentencing Table, a sentence of imprisonment is not required, unless the applicable guideline in Chapter Two expressly requires such a term.
>
> (c) **If the applicable guideline range is in Zone B of the Sentencing Table, the minimum term may be satisfied by**—(1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home

> detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or **(3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).** (emphasis added)

Since Mr. Faulkner was detained from the date of his arrest of January 29, 2022, until his release on conditions on February 26, 2022, he has already served twenty-nine (29) days of confinement in jail. Accordingly, for a compliance sentence, Mr. Faulkner would request thirty-one (31) days of home confinement with permission to leave for work purposes, so as to minimize disruption on the financial end for himself and for his girlfriend with whom he resides. This would be a compliant sentence under USSG §5B1.1, which states in its commentary:

> (a) Subject to the statutory restrictions in subsection (b) below, a sentence of probation is authorized if: (1) the applicable guideline range is in Zone A of the Sentencing Table; or (2) the applicable guideline range is in Zone B of the Sentencing Table and the court imposes a condition or combination of conditions requiring intermittent confinement, community confinement, or home detention as provided in subsection (c)(3) of §5C1.1 (Imposition of a Term of Imprisonment).[3]

---

[3] Commentary on USSG §5B1.1 states that: Where the applicable guideline range is in Zone B of the Sentencing Table (i.e., the minimum term of imprisonment specified in the applicable guideline range is at least one but not more than nine months). In such cases, the court may impose probation only if it imposes a condition or combination of conditions requiring a period of community confinement, home detention, or intermittent confinement sufficient to satisfy the minimum term of imprisonment specified in the guideline range. For example, where the offense level is 7 and the criminal history category is II, the guideline range from the Sentencing Table is 2–8 months. In such a case, the court may impose a sentence of probation only if it imposes a condition or conditions requiring at least two months of community confinement, home detention, or intermittent confinement, or a combination of community confinement, home detention, and intermittent confinement totaling at least two months. USSG §5B1.1, Commentary 1(B).

In addition, it would be beneficial for Mr. Faulkner to take an anger management class during his time on probation. Undoubtedly, Mr. Faulkner would not have been facing these charges if he had been able to control is anger over the situation. Taking an anger management class would be beneficial for Mr. Faulkner and help with any issues of recidivism.

Finally, should the court choose to give Mr. Faulkner additional jail time in the form of imprisonment, he would respectfully request that he would be able to serve his time in the Southern District of Ohio, and that he be permitted to self-report at a later date.

WHEREFORE, for the reasons stated above, Defendant Troy Faulkner respectfully requests a sentence as discussed above.

Respectfully submitted,

TROY FAULKNER
By Counsel

   /s/ John L. Machado
John L. Machado, Esq.
Bar No. 449961
Counsel for Troy Faulkner
503 D Street, N.W., Suite 310
Washington, DC 20001
Telephone: (703) 989-0840
E-mail: johnlmachado@gmail.com

## Certificate of Service

I hereby certify that a true copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system this 31st day of October, 2022, which will send a notification of such filing (NEF) to the following to all counsel of record.

   /s/John L. Machado
John L. Machado, Esq.
Bar Number 449961
Attorney for Troy Faulkner
Law Office of John Machado
503 D Street NW, Suite 310
Washington, D.C. 20001
Telephone (703)989-0840
Email: johnlmachado@gmail.com